[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action for dissolution, the plaintiff filed a complaint on January 20, 2000 seeking dissolution of the marriage, custody of the minor children, child support, alimony, a fair and equitable property settlement, and a fair and equitable division of debt, among other things. The complaint alleges that the parties were married on October 10, 1992, in Connecticut. The parties have two children, Kimberly A. Johnson, who was born prior to the marriage on December 25, 1990, and Lauren E. Johnson, who was born on June 20, 1993, both of whom are legitimate issue of the marriage. Both parties have resided in the State of Connecticut for 12 months preceding the date of the filing of this action. The complaint alleges that the marriage has broken down irretrievably.
Trial was held on May 31, 2001 and June 1, 2001. The plaintiff, her mother, a representative from the defendant's employer, and the defendant's girlfriend's ex-husband all testified for the plaintiff. The defendant and his current girlfriend testified on behalf of the defendant. Numerous exhibits were entered into evidence including, interalia, financial documentation. The Court has carefully considered all the evidence including the testimony and the exhibits, as well as the arguments of counsel, and the court concludes that the allegations in the complaint have been proven as stated in the body of the complaint.[1]
The court has carefully considered the statutory criteria as set forth in C.G.S. 46b-56, 46b-81, 46b-82, and 46b-84, for the granting of a dissolution of marriage, custody, visitation, child support and its related issues, the award of alimony and the division of the assets and CT Page 7501 liabilities of the parties and makes the following findings:
1. The parties were married on October 10, 1992. The parties first separated in February, 1993, but reconciled in June or July, 1993 after the birth of their second child. The parties again separated briefly in November, 1999 and then, after a short attempt at reconciliation, separated permanently on December 29, 1999. The marriage between the parties has broken down irretrievably and there is no reasonable hope of its reconciliation. In January, 2000, pendente lite orders were entered which gave custody of the two children to Kellie Johnson, with rights of visitation in Philip Johnson.
2. Plaintiff Kellie Johnson, 33 years of age, is currently attending school and caring for the two children who are in the fourth and second grades. She is also employed as a house cleaner from which she earns income of $70 per week. During the marriage, the plaintiff held various jobs, mainly at different convenience stores, typically earning minimum wages. She took a tax preparation course of study in 1999 and has been employed during the last two tax seasons at Jackson Hewitt Tax Service, a tax preparation service. This employment is only available to the plaintiff between January and April. Plaintiff is currently enrolled in a full time course of study at Ridley Lowell Business and Technical Institute in New London. Plaintiff currently attends school from 8:00 a.m. to 2:00 p.m. and expects to complete the program in September, 2001. At that time, she expects to seek employment that will permit her to be home with the children after school and on weekends. Thus, plaintiff's future earning capability is greater than her current earnings of $70 week, but remains somewhat limited by education, experience and her desire to be home with the children on afternoons and weekends.
3. The defendant, Philip C. Johnson, is 37 years old. During the marriage, the defendant worked primarily for Aldin Associates, Limited, frequently working long hours including holidays. He also was a volunteer firefighter and spent a considerable amount of time at the fire station. Although the defendant recently resigned his position as manager and accepted the lower-paying position of assistant manager at Aldin, this appears to have been done not in an attempt to reduce his child support payments, but to relieve work-related stress and as a result of a suggestion by his superiors that if he did not do so voluntarily, he would be required to do so in any event. This change in job status resulted in a decrease in pay from $11.25 per hour to $9.00 per hour. Just prior to trial, the defendant took on a second job, driving a truck for the New London Day. His current combined gross earnings are $526 per week, as set forth on the defendant's proposed child support guidelines, with potential for increased earnings. CT Page 7502
4. Both parties presented evidence concerning fault for the breakdown of the marriage. Here, there were obvious difficulties in the marriage that resulted in its irretrievable breakdown.
After having considered the testimony of the witnesses and the statutory criteria, the court orders the following:
1. The marriage of the parties is dissolved.
2. The plaintiff shall have sole custody of the minor children.
3. Visitation: The defendant shall be entitled to visitation with the minor children each Thursday from 4:00 p.m — 7:00 p.m. and the first three Sundays of every month from 10:00 a.m. to 7:00 p.m. If either child has an extracurricular activity or event during the defendant's visitation, defendant shall bring the child to the event, attend the event and thereafter, return the children to the plaintiff as scheduled. If the event is longer than the visitation schedule, the plaintiff is responsible to pick up the children after the event. Plaintiff shall have the children on Mother's Day and the defendant shall have the children on Father's Day. On the Thanksgiving and Christmas holidays, the defendant shall be entitled to visitation from 5:00 p.m. to 9:30 p.m. Any other holiday visitation shall be by mutual agreement. The parties may have such other visitation as they arrange by mutual agreement.
4. Child Support: The defendant shall pay the plaintiff child support at a rate of $150 per week by way of an immediate wage withholding order in accordance with the Child Support Guidelines of the State of Connecticut using both parties' current income. Although plaintiff proposed use of 2000 income for both parties in her guideline calculation, the Court uses the parties' current income because the plaintiff is currently attending school and in view of the Court's finding that the defendant did not decrease his income in an attempt to reduce child support payments.
5. Health Insurance: The children shall remain on the Husky Plan so long as it is available at no cost. In the event that there is a premium charge or coverage is lost, the parties shall either obtain coverage through their employment at a reasonable cost, or share equally the Husky Plan's premiums. All unreimbursed medical expenses shall be split equally between the parties.
6. Alimony: The defendant shall pay the plaintiff $50 a week for 3 1/2 years for alimony, except that alimony payments shall terminate sooner upon either party's death or plaintiff's remarriage. Said alimony shall be paid pursuant to an immediate wage withholding order. The defendant may CT Page 7503 seek modification of the alimony amount as provided in C.G.S. 46b-86
(b), however, alimony is non-modifiable as to term. The court orders alimony for a period of 3 1/2 years by which time the youngest child will be in sixth grade and the plaintiff will have had an opportunity to complete her studies and obtain suitable employment.
7. Real Estate: The defendant shall quitclaim all his right, title and interest in and to 78 Rimek Road, Lisbon, CT to the plaintiff, who shall be responsible for, and hold the defendant harmless from, the mortgage, taxes, insurance and carrying costs thereon.
8. Retirement/Pension Plan: The defendant's 401K shall be divided equally by way of a Qualified Domestic Relations Order. The Court shall retain jurisdiction over this provision.
9. Debts/Liabilities: The parties shall be responsible each for their own debts as listed on their respective financial affidavits, except that the Citibank debt listed on the plaintiff's financial affidavit (which represents the cost of a computer for the children and a family vacation in which both parties participated) shall be divided equally between the parties. Each party shall pay $50 per month toward the Citibank debt by the first of each month. The defendant shall make his $50 payment to the plaintiff who will apply the payment to the debt. Payments shall continue until the debt is paid in full. This obligation shall be in the nature of support and nondischargeable in bankruptcy. No additional charges shall be made on this account.
10. Personal Property: The parties have divided between them to their mutual satisfaction the personal effects, household furniture and furnishings and all other articles of personal property. Each party shall maintain title and ownership of the automobiles listed on the financial affidavits and shall hold the other harmless from any expenses and encumbrances thereon. Each party shall maintain their own bank accounts as listed on the financial affidavits.
11. Attorney's Fees: The parties shall be responsible for their respective attorney's fees.
It is So Ordered this 13 day of June, 2001.